## THE STATE v. HARRIS.

Sec. 4 of the stat. of 1 April, 1835, which provides that " all bonds and recognizances taken by the associate judges, mayor, or recorder, within the city of New Orleans, for the public peace or in criminal matters generally, shall, when forfeited, be recovered by the city attorneys for the use of the corporation of New Orleans," includes among the bonds which are to inure to the benefit of the city, bonds returnable before the District Court as well as those which are returnable before the mayor, associate judges, or recorder. The stat. of 11 March, 1837, ch. 104, indicates no intention on the part of the legislature to change the destination of the proceeds of these bonds, when collected.

The stat. of 8 March, 1836, dividing the city of Now Orleans into three municipalities, did not abolish the old city corporation, nor deprive it of the right of suing for the amount of forfeited bonds and recognizances, directed by sec. 4 of the stat. of 1 April, 1835, to be recovered for its use.

APPEAL from the First District Court of New Orleans, *Kennedy*, J. presiding. *Morel*, for the city of New Orleans, appellant. *J.*, and *H. H. Strawbridge*, for the Charity Hospital. The judgment of the court was pronounced by

KING, J. This is a contest between the city of New Orleans and the Chari-

STATE
v.
HARRIS.

ty Hospital, in relation to their respective rights to receive the proceeds of a bond, taken before the recorder of the Second Municipality, for the appearance of *Abraham H. Harris* before the District Court, to answer to a criminal charge. The bond was forfeited, and a judgment rendered for its amount against the principal and surety, which was affirmed by this court in May last. 2 Ann. Rep. p. 516. After the sum was collected, the attorney for the corporation of New Orleans intervened, and claimed that it be paid over to the city under the 4th section of the act of 1835 (Sess. Acts, p. 179), which provides " that all bonds and recognizances taken by the associate judges, mayor, or recorders, within the city of New Orleans, for the public peace, or in criminal matters generally, shall, when forfeited, be recovered by the city attorneys for the use of the corporation of New Orleans, all laws to the contrary notwithstanding." The State and Charity Hospital answered this intervention, and claimed the amount of the bond under the act of the 11th March, 1837, p. 73, which is in these words: " The treasurer of the State is hereby authorised and required to pay, upon the warrant or warrants of the president of the board of administrators of the Charity Hospital, to the order of the treasurer thereof, quarter annually, the nett proceeds of all sums of money which may be collected and paid over into the treasury of the State arising from the recovery of forfeited bonds and recognizances, and fines which may be assessed in criminal cases and for contempt of courts : provided that not more than $40,000 shall be paid in any one year." The district judge awarded the amount of the bond to the Charity Hospital, and the city has appealed.

It is contended on the part of the State that the bonds and recognizances referred to in the act of 1st April, 1835, which are, when forfeited, to inure to the city, are those which are returnable before the mayor, associate judges, or recorder, and not those which are returnable before the District Court, and which when forfeited are to be collected by the attorney general under the act of 1837. (Sess. Acts, p. 99.) The language of the statute does not, in our opinion, authorise this construction. The act gives to the corporation of New Orleans all bonds, taken within its limits by certain officers " for the public peace or *in criminal matters generally.*" These terms include as well bonds for appearances before the (former Criminal, at present) District Court, as those for appearances before the recorder. This interpretation is not inconsistent with the provisions of the act of the 11th March, 1837, relied on by the State. The operation of the former is confined exclusively to bonds and recognizances taken by certain officers within specified limits ; the latter extends to bonds taken by other officers in the city of New Orleans, and to bonds, recognizances, and fines collected in other parishes of the State. *State v. Desforges*, 5 Rob. 253. There is no conflict between the provisions of the two acts. Full effect may be given to both. No inference of an intention on the part of the legislature to change the destination of the proceeds of these bonds when collected, can be drawn from the act of 11th March, 1837 (p. 99), directing the attorney general and district attorney to collect certain bonds, the collection of which had previously been entrusted to the city attorneys. It is to be presumed that motives of public policy suggested the change, and induced the legislature to confide to its own officers the control of those which were for appearance before the Criminal and District Courts, and to provide a summary proceeding for enforcing their collection. That statute is not in conflict either with the act of 1835 giving certain bonds to the city, nor with the act giving the

proceeds of others to a certain amount to the Charity Hospital, and is silent as to the disposition to be made of the proceeds when collected. The control of the bonds was wisely lodged in the Criminal and District courts, as a means of coercing the attendance of parties bound to appear before them, as long as their use was necessary to that end; but the proceeds when collected were left to be distributed as directed by other laws.

But it is contended that, in 1836, the office of city recorder was abolished by the division of New Orleans into three distinct municipalities, each having its own recorder; that the repeal of the old city charter and abolition of the old city officers involved so far a repeal of the act of 1835; that the bond in question was taken by the recorder of Municipality No. two, and not the recorder of the city, who is contemplated by the act. This question can no longer be considered open. It was directly presented and decided in the case of the *State* v. *Labatut.* 8 Rob. 33. The late Supreme Court held in that case that, the act dividing the city into municipalities did not abolish the old city corporation, nor deprive it of the right of claiming the amount of forfeited bonds and recognizances, directed by the 4th section of the act of 1835 to be recovered for its use.

It is not necessary to enquire whether the act of the 1st June, 1846 (p. 78), by which the city courts were abolished, has, in any respect, repealed the law under which the city claims. The rights of the corporation accrued prior to the passage of that act.

It is therefore ordered that the judgment of the District Court be reversed. It is further decreed that the nett proceeds of the bond in controversy, executed by *Abraham H. Harris* and *Samuel Moore*, be paid to the intervenors, the mayor and commissioners of the general sinking fund of the city of New Orleans; the appellees paying the costs of both courts arising out of this litigation.