BRUNOT, J.
 

 This is a suit upon an alleged contract. The sum claimed in the petition is $2,250, but the prayer thereof is for a judgment against the defendant for $2,550, with legal interest thereon from judicial demand and for costs of the suit. From a judgment dismissing the suit plaintiffs appealed.
 

 The defenses to the suit are that the board of aldermen of the village of Mamou were not authorized to enter into the contract sued upon, and that plaintiffs are not licensed and registered engineers in this state.
 

 On September 7, 1920, the village of Mamou,' through its then board of aldermen, entered into a contract with the plaintiffs. This contract provided for the employment of plaintiffs, as civil engineers, and in that capacity, to make a survey of the village of ' Mamou, and to submit to the board of aider-men of said village a complete set of plans and' specifications for the construction of a municipally owned waterworks and fire protection system for the village. It was stipulated in the contract that plaintiffs should be paid $150 when this work was completed, and, in the event that the taxpayers of the village should ultimately authorize the levy of a tax and the issuance of bonds to construct a system of waterworks, the plaintiffs were to serve the village, as its supervising and directing engineers, during the construcr tion thereof, and, after the work was completed, to thoroughly inspect and test it and to report the result of their inspection and test to the board, with such recommendations as they might deem proper. It was further stipulated that if the taxpayers authorized the work, the services to be rendered by the plaintiffs included the furnishing of maps, plans, specifications, form of bidding, sheet contract, bond for materials, equipment, and construction, itemized estimates of cost, probable income and expenses of operation, inspection of materials, engineering supervision of the work, maintenance of necessary supervision at plaintiffs’ cost, and to furnish the board of aldermen approved estimates of the work as it progressed, each month, as the basis upon which payments should be made therefor. For this service the plaintiffs were to receive, as full compensation, 6 per cent, of the total cost of the work, less the payment of $150, the sum the board of aider-men had contracted to pay, and did pay, when
 
 *1073
 
 the initial plans and specifications were completed and submitted to it.
 

 Three years after this contract was entered into, the village of Mamou voted a special tax and authorized the sale of bonds for the purpose of providing the village with a system of waterworks. When the proposed bond issue was approved by the taxpayers, the then board of aldermen, whose terms were about to expire and whose positions were soon to be filled by other persons, held a meeting of the board at which the following motion was made and adopted:
 

 “It was moved by Alderman L. M. Gouvillion that the engineering office of Xavier A. Kramer and Henry A. Mentz be continued in connection with the creation and construction of the proposed waterworks and fire protection plant, for which bonds have been recently voted by the village taxpayers, and that it is the sense of the board that the detailed plans and specifications be gotten under way as soon as possible, so that any likely increase in material cost may be offset.”
 

 Shortly after the passage of the foregoing motion, the newly elected aldermen were inducted into office. They took the position that, as neither of the plaintiffs was registered as a licensed engineer in this state, a contract with them, as supervising engineers of the proposed work, was illegal and violative of the provisions of Act 200 of 1914, as amended by Act 242 of 1920, and thereupon they passed a resolution directing that the work be done by the village upon a cost plus basis, and that Mr. Albert Tate, a licensed engineer of the state, be employed as their supervising engineer. The work, in its entirety, was done under Mr. Tate’s supervision and direction by the village of 'Mamou.
 

 The contract sued upon is clearly ultra vires. It was entered into three years before the election was held wherein the taxpayers voted a tax and authorized the issuance of bonds for the purpose of constructing a system of waterworks in the village. The motion quoted supra, which was passed by the board of aldermen of Mamou shortly after the said election, is not helpful to plaintiffs as a' ratification of the contract dated September 7, 1920, because the accepted rule is that—
 

 “Generally the courts have recognized as a truism that what a municipality has no power to do it has not done merely because it tried to do it, and have accordingly refused to give legal effect to ultra vires contracts.” Cyc. vol. 28, p. 279.
 

 With reference to the inability of a municipal corporation to validate an ultra vires contract, the rule is as follows:
 

 “An illegal or ultra vires municipal contract, being void, is not susceptible of validation, unless meanwhile the legislature has conferred upon the corporation power to ratify or to make such contracts.” Cyc. vol. 28, p. 675.
 

 As an original agreement of employment, the motion which was passed by the outgoing board of aldermen of Mamou for the expressed purpose of retaining the services of the plaintiffs as the engineers of the village of Mamou to supervise the construction of the proposed system of waterworks is fatally defective. It makes no provision for the compensation of the supervising engineers, or the time and manner in which it should be paid, or for the execution of a bond by them guaranteeing the performance of their duties. In fact, it makes no provision for anything, except that the detailed plans and specifications (evidently the plans and specifications submitted in 1920) be gotten under way by the plaintiffs for the purpose of offsetting probable increased costs of material. The adoption of such a motion may entitle plaintiffs to a suit, on a quantum meruit, for such services, if any, they rendered the village of Mamou between the date of its passage and the date the successors of the board of aldermen, which adopted it, rescinded or ignored it. This is the extent of its effect, and the extent of plaintiffs’ right,
 
 *1075
 
 in a proper proceeding, to any recovery from the defendant.
 

 With reference to the right of plaintiffs to practice their profession in this state without first having complied with the provisions of Act 200 of 1914, as amended by Act 242 of 1920, it may be said that plaintiffs had in their employ engineers who had qualified under the provisions of said acts and who were assigned by plaintiffs, after consultation with them, to prepare the plans and specifications which were submitted to the board of aider-men of the village of Mamou. Section 13 of Act 242 of 1920 is as follows:
 

 “Be it further enacted, etc., that this act shall not apply to the engineering department of the United States, nor to the civil engineers and surveyors of other states and territories, when in actual and bona fide consultation with registered civil engineers or surveyors of this state.”
 

 Eor the reasons stated, it is decreed that the judgment appealed from be, and it is, amended by reserving to plaintiffs the right to sue the defendant, upon a quantum meruit, for' such sum, if any, "as may be due them, and, as thus amended, the said judgment is affirmed at appellants’ cost.
 

 O’NIELL, C. J., dissents.